## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

GOVANNA MENESE GARCIA,    )
   )
     Plaintiff,    )
   )
vs.    )    Case No. 4:24-cv-00626-FJG
   )
MIDLAND CREDIT MANAGEMENT,    )
INC.,    )
   )
     Defendant.    )

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING SUGGESTIONS

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    STATEMENT OF UNCONTROVERTED MATERIAL FACTS.....................................3

      A.     BACKGROUND ....................................................................................4

      B.     MIDLAND'S INVESTIGATION AND RESULTS ...............................................5

      C.     PLAINTIFF'S COMPLAINT AND ALLEGED INJURIES ...............................6

      D.     BONA FIDE ERROR DEFENSE ..................................................................9

III.    ARGUMENT .....................................................................................................10

      A.     Plaintiff Cannot Meet Her Burden of Proof to Establish Article III Standing ................................................................................................11

           1.     Plaintiff Cannot Demonstrate an Injury-In-Fact ....................................13

               a.     Plaintiff Has No Tangible Injury ....................................................13

                   i.     Alleged Incurred Expenses ..............................................13

                   ii.     Alleged Emotional Distress .............................................14

                   iii.     Alleged Time and Effort ..................................................14

                   iv.     Alleged Credit Harm ........................................................15

               b.     Plaintiff Has No Intangible Injuries...............................................16

               c.     Plaintiff's Alleged Injuries Were Self-Inflicted, And Thus, Plaintiff Cannot Establish That Her "Injuries" Were Caused by the Credit Reporting...................................................................16

      B.     Alternatively, Judgment Should Enter for Midland Because Plaintiff Cannot Establish That the Credit Reporting Violated Sections 1692e(2)(A) or 1692f...................................................................................................17

           1.     Plaintiff's Section 1692e(2)(A) Claim Fails Because the Statement Was Not Materially False or Misleading ...................................................17

           2.     Plaintiff's Section 1692f Claim Fails Because it is Duplicative and the Conduct Alleged Was Not "Unfair or Unconscionable" ....................18

      C.     Judgment Should Enter for Midland Because It Is Entitled To The Bona Fide Error Defense ...........................................................................................19

IV.    CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aaron Foreman v. Midland Credit Management, Inc.,
No. 24-02283 (D. Kan. filed July 1, 2024) ................................................................................2

Ashley Campbell v. Midland Credit Management, Inc.,
No. 24-02256 (D. Kan. filed June 14, 2024) ............................................................................2

Bassett v. Credit Bureau Servs., Inc.,
60 F.4th 1132 (8th Cir. 2023) .................................................................................... *passim*

Bauer v. Midland Credit Mgmt., Inc.,
No. 23-00367, 2024 WL 3512079 (W.D. Mo. July 23, 2024)
................................................................................................................................13, 15, 16, 17

Bedrosian v. Kansas Couns., Inc.,
No. 15-00942, 2015 WL 6445341 (E.D. Mo. Oct. 23, 2015)..................................................19

Buchholz v. Meyer Njus Tanick, PA,
946 F.3d 855 (6th Cir. 2020) ............................................................................................15, 16

Bynum v. Cavalry Portfolio Servs., L.L.C.,
No. 04-0515, 2005 WL 2789199 (N.D. Okla. Sept. 29, 2005)...............................................20

Cavazzini v. MRS Assocs.,
574 F. Supp. 3d 134 (E.D.N.Y. 2021) ..............................................................................14, 15

Contreras v. Midland Credit Management, Inc.,
No. 24-00437 (W.D. Mo. Filed July 1, 2024)........................................................................2

Cramer v. Equifax Info. Servs., LLC,
No. 18-1078, 2019 WL 5188942 (E.D. Mo. Oct. 15, 2019)..................................................19

Denmon v. Kansas Counselors, Inc.,
No. 2025 WL 2329189, 2025 WL 2329189 (8th Cir. Aug. 13, 2025) ...............................2, 16

Diamond Alternative Energy, LLC v. Env't Prot. Agency,
145 S. Ct. 2121 (2025)............................................................................................................13

In re FDCPA Mailing Vendor Cases,
551 F. Supp. 3d 57 (E.D.N.Y. 2021) ......................................................................................11

Found. v. Kaler,
14 F.4th 879 (8th Cir. 2021) ...................................................................................................14

Fox v. ProCollect, Inc.,
No. 17-00634, 2019 WL 386159 (E.D. Ark. Jan. 30, 2019)......................................................19

Hekel v. Hunter Warfield, Inc.,
118 F.4th 938 (8th Cir. 2024) ...........................................................................................12, 14

Hemmingsen v. Messerli & Kramer, P.A.,
No. 09-1384, 2011 WL 494941, (D. Minn. Feb. 7, 2011),....................................................18

Hill v. Accts. Receivable Servs., LLC,
888 F.3d 343 (8th Cir. 2018) ........................................................................................17, 18

Honour Hobbs v. Midland Credit Management, Inc.,
No. 24-02255 (D. Kan. filed June 14, 2024) ........................................................................2

Islam v. Am. Recovery Serv. Inc.,
No. 17-4228, 2017 WL 4990570 (E.D.N.Y. Oct. 31, 2017).................................................3

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,
559 U.S. 573 (2010) (Kennedy, J., dissenting)...................................................................11

Johnson v. Riddle,
443 F.3d 723 (10th Cir. 2006) ..........................................................................................20

Petri v. Valarity, LLC,
No. 15-72, 2015 WL 13650911 (E.D. Mo. Mar. 13, 2015)................................................19

Picht v. Jon R. Hawks, Ltd.,
236 F.3d 446 (8th Cir. 2001) .............................................................................................20

Sires v. Midland Credit Mgmt., Inc.,
No. 23-00583, 2024 WL 2274083 (D. Colo. May 20, 2024) ..............................................20

Smitherman v. Midland Credit Mgmt., Inc.,
No. 23-00199, 2024 WL 3015790 (W.D. Mo. June 14, 2024).............................................13

Spehr v. Seterus, Inc.,
No. 18-1922, 2019 WL 4246929 (E.D. Mo. Sept. 6, 2019) ................................................18

Spokeo, Inc. v. Robins,
578 U.S. 330 (2016), as revised (May 24, 2016)...................................................................11

TransUnion LLC v. Ramirez,
594 U.S. 413 (2021)......................................................................................................2, 11, 12

Volden v. Innovative Fin. Sys., Inc.,
440 F.3d 947 (8th Circ. 2006)...............................................................................................18

Case 4:24-cv-00626-FJG    Document 32    Filed 09/11/25    Page 4 of 27

West v. Abendroth & Russell L. Firm,
   45 F. Supp. 3d 959 (N.D. Iowa 2014).................................................................................21

Williams v. LVNV Funding, LLC,
   21-01407, 2024 WL 1194492 (E.D. Mo. Mar. 20, 2024)........................................................17

**Statutes**

15 U.S.C. § 1692a ........................................................................................................................11

15 U.S.C. § 1692e(2)(A)........................................................................................3, 11, 17, 19

15 U.S.C. § 1692f ................................................................................................ *passim*

15 U.S.C. § 1692k.........................................................................................................................11

15 U.S.C. § 1692k(c) ............................................................................................................3, 19

**Other Authorities**

Local Rule 56.1(a) ........................................................................................................................3

## I.    INTRODUCTION

This case arises out of a state court lawsuit for two unpaid accounts owed by Plaintiff where Plaintiff Govanna Meneses Garcia ("Plaintiff") was represented by counsel.  In the state court lawsuit, <u>Midland Credit Management, Inc. v. Govanna Meneses</u>, No. 2416-CV06790, Jackson County, Missouri ("State Court Lawsuit"), the parties, by and through counsel, reached a settlement and on or about May 20, 2024, a dismissal with prejudice was entered.  At that time, Defendant Midland Credit Management, Inc. ("Midland") was credit reporting the two accounts as past due <u>and</u> as "*disputed by consumer*."  Due to an inadvertent coding error, Midland logged the State Court Lawsuit into its computer system as dismissed without prejudice (instead of "with prejudice").  As such, instead of requesting that the credit reporting agency, Experian, delete the accounts or mark them as paid, the accounts continued to be credit reported as "disputed" for less than a six-month time period.  Plaintiff alleges that she obtained a copy of her Experian credit report on August 28, 2024, and that the accounts were still being credit reported.

Instead of contacting Midland's counsel—with whom Plaintiff's counsel had just negotiated the settlement in question—to expeditiously resolve the matter, Plaintiff's counsel contacted Midland (a represented party) directly via a letter sent via regular mail (that Midland did not receive until September 24, 2024).  The next day, on September 25, 2024, Plaintiff filed this federal lawsuit.  Plaintiff's Complaint claims that Midland violated Sections 1692e(2)(A) and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, <u>et</u> <u>seq.</u>, by continuing to credit report her two accounts.  Again, the credit reporting was that the account information was "*disputed by the consumer*."  The Complaint alleges that the credit reporting caused Plaintiff "anxiety and distress" and to expend additional time and/or expense to have her attorney write a letter to Midland to re-emphasize that these debts were no longer owed and negatively impacted her credit score.  (Doc. 1 ¶¶ 10-11.)  Plaintiff, however, has no documents to

1

support these allegations.  In fact, Plaintiff **cannot recall if she paid her attorney any money to write the letter to Midland or if she ever saw her Experian credit report.**

This is the very type of case that the United States Supreme Court and the Eighth Circuit have recognized is not subject to suit in federal court.  TransUnion LLC v. Ramirez, 594 U.S. 413, 440-41 (2021); Bassett v. Credit Bureau Servs., Inc., 60 F.4th 1132, 1137 (8th Cir. 2023).  These Courts have made clear that an alleged statutory violation is no longer enough to demonstrate the right to bring a federal court lawsuit.  Plaintiff must also establish that she has Article III standing.  Id.  To establish standing, Plaintiff must demonstrate, inter alia, that she suffered a "concrete harm."  Id.; Denmon v. Kansas Counselors, Inc., No. 2025 WL 2329189, 2025 WL 2329189, *1 (8th Cir. Aug. 13, 2025).

The record in this case demonstrates that Plaintiff cannot meet her burden to establish standing.  Instead, the record reveals that Plaintiff's counsel obtained Plaintiff's Experian credit report in an obvious attempt to create an injury where none actually existed.  Further demonstrating this point, the alleged injuries in this case (i.e., "additional time, effort, and/or expense to have her attorney write a letter to Defendant" and "negatively impacted Ms. Garcia's credit score") are the _very same_ "injuries" that Plaintiff's counsel has alleged in at least four other cases.  (Compare Doc. 1 ¶¶ 9-11, with Complaint (Doc. 1 ¶¶ 9-13), Contreras v. Midland Credit Management, Inc., No. 24-cv-00437 (W.D. Mo. Filed July 1, 2024); Honour Hobbs v. Midland Credit Management, Inc., No. 24-02255 (D. Kan. filed June 14, 2024); Ashley Campbell v. Midland Credit Management, Inc., No. 24-02256 (D. Kan. filed June 14, 2024); Aaron Foreman v. Midland Credit Management, Inc., No. 24-02283 (D. Kan. filed July 1, 2024)).  The Contreras case is pending before the Honorable Judge Gary A. Fenner, where the parties have filed motions for summary judgment.

The reason for this ruse is to "obtain some money via statutory damages" and for Plaintiff's counsel to recover under the FDCPA's fee-shifting provision. Islam v. Am. Recovery Serv. Inc., No. 17-4228, 2017 WL 4990570, at *3 (E.D.N.Y. Oct. 31, 2017) (stating that the multitude of FDCPA cases suggests that the real beneficiaries are the plaintiff's attorneys); see Bassett, 60 F.4th at 1137 (holding that seeking to ensure defendant's compliance with regulatory law "and, of course, to obtain some money via statutory damages," is not a concrete injury in fact). Plaintiff's tactics should be rejected.

Even if Plaintiff could clear the standing hurdle, which she cannot, Plaintiff must establish that Midland violated the FDCPA. Plaintiff claims that Midland violated Sections 1692e(2)(A) and 1692f by continuing to credit report the accounts as "disputed." The Eighth Circuit has determined that Section 1692e(2)(A) contains a materiality requirement, which requires that a false or misleading statement be "material" (i.e., the statement would affect a person's decision-making) to be actionable. Here, the statement in Plaintiff's credit report could not possibly be "material" because **Plaintiff did not view her credit report, and she was represented by counsel**. As to her Section 1692f claim, it fails because it is duplicative of her Section 1692e(2)(A) claim and the conduct alleged is not "unfair or unconscionable."

Finally, even if Plaintiff could establish standing and a violation of the FDCPA, which she cannot, judgment should enter for Midland for the independent reason that Midland's failure to notate the accounts as "disputed" was a "bona fide error" as set forth in 15 U.S.C. § 1692k(c). As such, Midland is not liable as a matter of law.

## II.     STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Pursuant to Local Rule 56.1(a) and for purposes of its Motion for Summary Judgment only, Midland submits the following statement of uncontroverted material facts ("SUMF"):

3

## A.    BACKGROUND

1.    Via the lawsuit captioned, <u>Midland Credit Management, Inc. v. Govanna Meneses Garcia aka Govanna Menses</u>, No. 2416-CV06790, filed in Jackson County, Missouri, Midland sought to recover two Comenity Bank credit card accounts that were owed by Plaintiff to Midland (hereinafter "Accounts"). (Doc. 1 ¶ 7.)

2.    Plaintiff does not dispute that she owed the Accounts to Midland. (<u>E.g.</u>, Doc. 1 ¶¶ 7-8.)

3.    Plaintiff's counsel in this case, the Callahan Law Firm, LLC, solicited Plaintiff to represent her in the State Court Lawsuit and subsequently represented her in that case. (Deposition of Govanna Garcia ("Garcia Dep."), attached hereto as "**Exhibit A**," at 40:12-44:9.)

4.    Plaintiff paid Callahan Law Firm, LLC $400.00 to represent her in the State Court Lawsuit. (Garcia Dep. 61:2-17, 80:79:25-82:15.)

5.    On or about May 6, 2024, Plaintiff, through counsel, entered into a settlement agreement with Midland, via its counsel, to resolve the State Court Lawsuit and the State Court Lawsuit was subsequently dismissed with prejudice. (Doc. 1 ¶ 8.)

6.    Following dismissal, Plaintiff's counsel sent a letter to Midland via regular mail, which Midland received on September 24, 2024, asserting that the Accounts were being reported on Plaintiff's credit report with a balance and asking that the Accounts be updated to either zero out the balances or to be deleted (hereinafter referred to as "Counsel's Letter"). (Doc. 1-4; Deposition of Josh Knebel ("Knebel Dep"), attached hereto as "**Exhibit B**," 76:1-15.)

7.    Plaintiff's counsel sent Counsel's Letter directly to Midland and did not contact Midland's counsel to attempt to resolve the credit reporting issue. (Doc. 1-4.)

8.    On September 25, 2024, Plaintiff's counsel filed the Complaint in this case, asserting that Midland violated 15 U.S.C. §§ 1692(e)(2)(A) and 1692f by seeking to collect a debt

that was no longer owed and falsely representing the character, amount, or legal status of the Accounts. (Doc. 1 ¶¶ 13-20.)

9. Plaintiff's Complaint alleges that on August 28, 2024, she reviewed a copy of her Experian credit report (Doc. 1 ¶ 9), but does not allege that any creditor or third party reviewed it (Doc. 1).

10. Plaintiff testified, however, that she "can't remember" if she has ever seen the Experian credit report, or if she (as opposed to her attorney) downloaded and printed the Experian credit report. (Garcia Dep. 48:16-49:13, 68:4-19, 69:6-70:1.)

**B. MIDLAND'S INVESTIGATION AND RESULTS**

11. Midland did not learn of Plaintiff's claim that the Accounts were mistakenly coded until approximately September 24-25, 2025, when it received and reviewed Counsel's Letter and when Plaintiff filed her Complaint in this case. (Knebel Dep. 24:5-25:13.)

12. After Midland learned of Plaintiff's claim, it promptly investigated the issue. (Knebel Dep. 89:20-21.)

13. Midland discovered that:

(a) Midland's counsel provided Midland with a copy of the dismissal with prejudice, but Midland's employee(s) mistakenly coded the Accounts as dismissed without prejudice. (Knebel Dep. at 35:21-36:10, 57:10-14, 69:14-70:25, 86:6-11.)

(b) The Accounts began credit reporting as "disputed" on April 26, 2024, and continued to be credit reported as "disputed" until the credit reporting ceased. (Declaration of Sandra Ross ("Ross Decl."), attached hereto as "**Exhibit C**," at ¶ 6.)

14. After Midland investigated Plaintiff's claim, Midland reported the Accounts as deleted and then stopped credit reporting on the Accounts. (Knebel Dep. 90:3-13; see also, Garcia Dep. 47:12-13, 50:24-51:10.)

15. Midland believes that the last date the Accounts were credit reported (which was, again, as "disputed") was October 25, 2024. (Ross Decl. ¶ 6.)

**C.     PLAINTIFF'S COMPLAINT AND ALLEGED INJURIES**

*__Alleged Credit Harm__*

16. During the time period at issue, Plaintiff had financial difficulties.  (Doc. 1 ¶ 7; Garcia Dep. 11:23-12:3.)

17. Plaintiff's Complaint alleges that the credit reporting "negatively impacted Ms. Garcia's credit score."  (Doc. 1 ¶ 11.)

18. However, **Plaintiff testified she does not know if her credit rating was impaired because of the credit reporting at issue in this case**.  (Garcia Dep. 91:11-18.)

19. Plaintiff has no documents to support a claim that the credit reporting caused any harm to her credit score.  (Plaintiff's Response to Defendant's First Set of Requests for Production of Documents ("Plaintiff's Response to Request for Production") No. 8, which is attached as "**Exhibit 104**" to the Garcia Dep.)

20. Plaintiff has no documents to support a claim that she was unable to obtain credit as a result of the credit reporting.  (Plaintiff's Response to Request for Production No. 9, in Garcia Dep., Ex. 104.)

21. In fact, Plaintiff testified that she does not know if she was denied any credit due to Midland's credit reporting.  (Garcia Dep. 92:17-24.)

22. Plaintiff does not have any evidence that her credit report was harmed by the credit reporting issue.  (Garcia Dep. 91:6-10.)

23. Plaintiff cannot "fully remember" if she applied for credit during the time period at issue in this case where she was denied credit.  (Garcia Dep. 53:5-20.)

24.     Plaintiff was not informed that she was denied credit due to the credit reporting at issue or the Accounts at issue.  (Garcia Dep. 55:10-58:25.)

25.     Plaintiff has not alleged that anyone ever saw Plaintiff's credit report during the time period at issue in this case.  (Doc. 1.)

26.     On the credit report attached to Plaintiff's Complaint, Plaintiff has at least eight accounts in addition to the Accounts at issue, that were reported as seriously past due, past due, or unpaid balance reported as a loss.  (Garcia Dep. 70:21-78:13.)

### *Alleged Emotional Distress*

27.     Plaintiff's Complaint alleges that Midland's credit reporting caused her "anxiety and distress."  (Doc. 1 ¶ 10.)

28.     **However, Plaintiff has no documents related to any aggravation and/or emotional distress caused by the credit reporting at issue in this case.**  (Plaintiff's Response to Request for Production No. 7, in Garcia Dep., Ex. 104.)

29.     Plaintiff does not remember if she missed work as a result of the credit reporting at issue, other than for her deposition in this lawsuit that she filed.  (Garcia Dep. 93:9-21.)

30.     Plaintiff testified that she has stress and anxiety, but it has gotten worse because of *her* lawsuit against Midland.  (Garcia Dep. 63:2-65:16, 108:2-109:5.)

31.     During the time period at issue, Plaintiff was involved in a separate family law case that was very emotional for her.  (Garcia Dep. 32:8-33:19, 95:3-22.)

32.     Plaintiff has not seen a doctor, therapist, or medical provider as a result of the credit reporting at issue in this case.  (Garcia Dep. 92:25-93:8.)

7

*Alleged Time and Effort*

33.     Plaintiff's Complaint alleges that Midland's credit reporting caused her to take additional time and effort to have her attorney re-emphasize that these debts were no longer owed and to fix the credit reporting.  (Doc. 1 ¶ 10.)

34.     **However, Plaintiff has no documents to support that she (herself) spent any time or effort as a result of the credit reporting.**  (Plaintiff's Response to Request for Production No. 6, in Garcia Dep., Ex. 104.)

*Alleged Out-of-Pocket Costs*

35.     Plaintiff's Complaint alleges that the credit reporting caused her "expense to have her attorney write a letter."  (Doc. 1 ¶ 10.)

36.     In an interrogatory answer, Plaintiff stated that her expenses consisted of the amounts paid to pull her credit report ($3.22) and the amount for postage to send Counsel's Letter ($.68).  (Plaintiff's Response to Defendant's First Set of Interrogatories, No. 3, which is attached as "**Exhibit 107**" to the Garcia Dep.)

37.     Plaintiff does not remember if she paid her attorneys $3.22 for her credit report. (Garcia Dep. 85:24-86:16, 89:14-19.)

38.     Plaintiff does not remember if she paid her attorneys for the cost of postage for Counsel's Letter.  (Garcia Dep. 89:14-90:2.)

39.     Plaintiff could have obtained her credit report on Credit Karma for free.  (Garcia Dep. 86:87:7.)

40.     Other than the payment of $400.00 to Callahan Law Firm, LLC for representing her in the State Court Lawsuit pursuant to a March 28, 2024, fee agreement (which was entered

into five months *before* Plaintiff's counsel obtained Plaintiff's credit report), Plaintiff has *not* paid her attorneys any money. (Garcia Dep. 60:22-62:22.)

41. Plaintiff's attorneys have not sent Plaintiff any bills in this case. (Garcia Dep. 82:25-83:8.)

42. Plaintiff has not produced any agreement with her attorneys in this case that requires her to pay expenses in this case (Plaintiff's Response to Request for Production No. 5 in Garcia Dep., Ex. 104) or any receipts for expenditures related to this case (Garcia Dep. 90:3-24).

### D. BONA FIDE ERROR DEFENSE

41. Midland was represented in the State Court Lawsuit by legal counsel. (Knebel Dep. 33:13-21.)

42. Midland has policies and procedures that pertain to what actions should be taken after settlement of an account that is placed with legal counsel. (<u>E.g.</u>, Knebel Dep. 35:8-20, 110:2-114:1, 121:12-127-7.)

43. Midland's policies and procedures contain multiple "workflows," meaning the steps that need to be taken as a result of a settlement and that govern how its employees must code legal documents, including what coding should have been used in this case. (Knebel Dep. 22:8-23:1, 77:12-79:6, 105:5-106:17.)

44. As part of Midland's processes and procedures, its attorneys are required to scan a dismissal of an account with prejudice, which Midland's attorneys did in this case. (Knebel Dep. 36:4-10.)

45. Pursuant to Midland's policies and procedures, after Midland's attorneys scan the dismissal with prejudice, Midland's legal specialists are required to "code" the account and there are guidelines for how to code. (Knebel Dep. 69:22-71:1, 78:16-79:11.)

9

46. Midland's policies and procedures explain how the coding impacts the status of the accounts. (Knebel Dep. 79:9-23.)

47. In regard to Plaintiff's Accounts, Midland's policies and procedures required that the employee code the Accounts by pressing an F12 button on a keyboard and then perform four steps that would culminate in the C125 code, for dismissed with prejudice being used. (Knebel Dep. 81:2-86:21.)

48. Midland's account notes demonstrate that the C125 code was mistakenly not used in this case. (Knebel Dep. 97:398:3.)

49. Because the Accounts were mistakenly coded as dismissed <u>without</u> prejudice, the Accounts continued to be credit reported as "disputed" after the State Court Lawsuit was dismissed. (Knebel Dep. 88:2-10.)

50. The coding error, which resulted in the Accounts being reported as "dismissed without prejudice," was not intentional. (Knebel 29:12-19; Ross Decl. ¶ 7.)

51. The coding error, which resulted in the Accounts being reported as "dismissed without prejudice," was made in good faith. (<u>See</u> Ross Decl. ¶ 7.)

52. Midland did not intend to credit report Plaintiff's Accounts after the State Court Lawsuit had been dismissed. (<u>See</u> Ross Decl. ¶ 7.)

53. When Midland received notice of the credit reporting, it immediately investigated and thereafter requested that the credit reporting be suppressed (deleted). (Ross Decl. ¶ 8.)

## III.    ARGUMENT

Judgment should enter for Midland for several independent reasons. First, judgment should enter for Midland because Plaintiff cannot meet her burden of proof to establish Article III standing. Standing is lacking because Plaintiff cannot demonstrate a concrete injury-in-fact, nor can she demonstrate that it was caused by Midland's credit reporting. For either or both of these

10

reasons, Plaintiff's Complaint should be dismissed. Judgment should also enter for Midland because, even if the Court determines that standing exists, Plaintiff cannot establish a material violation of Section 1692e(2)(A) or a violation of Section 1692f. Finally, judgment should enter for Midland for the independent reason that the credit reporting at issue was a quintessential bona fide error.

### A. Plaintiff Cannot Meet Her Burden of Proof to Establish Article III Standing

The FDCPA was enacted for the laudable purpose of curtailing abusive debt collection practices. 15 U.S.C. § 1692a. The FDCPA imposes strict liability on debt collectors, and the cost of a violation can be steep due to its fee-shifting provisions. See 15 U.S.C. § 1692k. The collateral effect, however, of the FDCPA is that it has created the incentive to file lawsuits even where no actual harm has occurred. Cf. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 616 (2010) (Kennedy, J., dissenting). Courts have recognized that "legions" of FDCPA cases are filed that have little to do with the purposes of the statute and that this remedial law has been used as a money-making vehicle for individuals and lawyers. In re FDCPA Mailing Vendor Cases, 551 F. Supp. 3d 57, 59 (E.D.N.Y. 2021).

Enter the Supreme Court's decisions in Spokeo, Inc. v. Robins[1] and later in TransUnion LLC v. Ramirez.[2] Spokeo and TransUnion changed the legal landscape of many cases brought in federal courts, including cases brought under the FDCPA. The Supreme Court in Spokeo and TransUnion, and the Eighth Circuit following suit, determined that alleged violations of federal statutory rights, without more, do not satisfy the required Article III standing. Instead, the Supreme Court has held that "Article III standing requires a concrete injury even in the context of a statutory

---

[1] 578 U.S. 330 (2016), as revised (May 24, 2016).

[2] 594 U.S. 413, 423 (2021).

violation," and "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 594 U.S. at 423, 426.

Recently, in Hekel v. Hunter Warfield, Inc., 118 F.4th 938 (8th Cir. 2024), an FDCPA case that concerned numerous alleged violations, the Eighth Circuit further explained:

> Even if we assume for the sake of argument that a violation occurred, she still lacks standing. The Supreme Court has rejected the idea that a bare "statutory violation" is a "concrete injury." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016); *see Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1136 (8th Cir. 2023) ("[T]he collectors' alleged violations of the [Act] do not alone provide standing ...."). A plaintiff must have "suffer[ed] [a] concrete harm" *in addition to* and "*because of* the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426-27, 141 S.Ct. 2190 (emphasis added). In other words, the other categories of harms she alleges will have to "satisfy the requirement of concreteness." *Spokeo*, 578 U.S. at 341, 136 S.Ct. 1540.

Id. at 942.

Thus, the law is clear that alleged violations of the FDCPA "do not alone provide standing" and the plaintiff must have suffered an injury in fact. Bassett v. Credit Bureau Servs., Inc., 60 F.4th 1132, 1136 (8th Cir. 2023). The law is also clear that where standing is being challenged at the summary judgment stage, such as here, Plaintiff must set forth specific facts to establish standing. TransUnion, 594 U.S. at 431 (holding that "in a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence adduced at trial.'"); Ojogwu, 2022 WL 433034, at *3.

Regarding the standing elements, the Supreme Court has explained that the injury in fact (harms) may be tangible (physical and monetary harms) or intangible ("injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts"). TransUnion, 594 U.S. at 425. Regarding causation, the Supreme Court has stated that "causation requires the plaintiff to show that the injury was likely caused by the defendant."

<u>Diamond Alternative Energy, LLC v. Env't Prot. Agency</u>, 145 S. Ct. 2121, 2133 (2025) (cleaned up). Finally, in response to this line of cases, clever plaintiffs and their counsel have attempted to manufacture standing. For example, in <u>Smitherman v. Midland Credit Mgmt., Inc.</u>[3], and <u>Bauer v. Midland Credit Mgmt., Inc.</u>[4], the Honorable Judge Greg Kays determined that plaintiffs' testimony regarding an injury (which allegedly consisted of the cost of a stamp) was an attempt to manufacture standing.

### 1. Plaintiff Cannot Demonstrate an Injury-In-Fact

Regarding the first element, an injury-in-fact, Plaintiff must demonstrate that she suffered "an invasion of a 'legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" <u>Bassett</u>, 60 F.4th at 1134-35. As set forth below, Plaintiff cannot demonstrate that she has suffered a tangible or intangible injury.

### a. Plaintiff Has No Tangible Injury

Plaintiff asserts that she can establish standing because she: had $3.90 of alleged expenses; suffered emotional distress as a result of the credit reporting; spent "time and effort"; and, suffered credit harm.[5] These alleged injuries fail either because there is no evidence to support them or they are insufficient as a matter of law.

### i. Alleged Incurred Expenses

First, regarding the "expenses," Plaintiff has *no* receipts to support that she paid or incurred these alleged expenses. (SUMF ¶¶ 41-42.) Second, she also cannot offer testimony to support the allegation. (SUMF ¶¶ 37-38.) In her deposition, Plaintiff testified that she does not remember if

---

[3] No. 23-00199, 2024 WL 3015790, at *3 (W.D. Mo. June 14, 2024).

[4] No. 23-00367, 2024 WL 3512079, at *3 (W.D. Mo. July 23, 2024).

[5] Courts discuss emotional distress and other non-monetary or non-physical injuries both as intangible and intangible injuries.

she paid her attorneys $3.22 for her credit report or $.68 for postage. (Id.) In fact, in her deposition, Plaintiff could not offer any testimony to support whether she even received a bill from her attorneys in this case for the alleged expenses. (Id.) She further testified that she had paid her attorney *no* money as it relates to this lawsuit. (SUMF ¶ 40.) Thus, there simply is *no* evidence to support the alleged expenses.

Plaintiff's failure to present admissible evidence demonstrating these "expenses" renders Plaintiff unable to meet her burden on this claim. Young Am.'s Found. v. Kaler, 14 F.4th 879, 888 (8th Cir. 2021) (holding that at summary judgment, the plaintiff must set forth by affidavit or other evidence specific facts to meet its burden to establish standing).

### ii. Alleged Emotional Distress

As to emotional distress being a basis of an injury for purposes of establishing Article III standing, the Eighth Circuit has held that alleging emotional injuries, such as confusion, worry, and sleeplessness fall short. Hekel, 118 F.4th at 943. Moreover, the Eighth Circuit has held that restlessness, worry, or other such negative emotions are likewise insufficient and do not give rise to standing. Id. (quoting and citing Ojogwu, 26 F.4th at 463). The Court has reiterated that negative emotions, such as stress by itself, "with no physical manifestations and no qualified medical diagnosis" do not amount to a concrete harm. Ojogwu, 26 F.4th at 463. These are precisely the types of injuries Plaintiff alleges in this case.

Plaintiff testified that she has stress and anxiety. Yet, Plaintiff did not see a doctor, therapist, or other medical provider, and she does not remember missing work because of the credit reporting. (SUMF ¶ 32.) These types of claims simply do not qualify as injuries in fact.

### iii. Alleged Time and Effort

Regarding the alleged "time and effort" expended, "wasted time cannot alone meet the requirements of Article III." Cavazzini v. MRS Assocs., 574 F. Supp. 3d 134, 144 (E.D.N.Y.

2021).  Moreover, the reimbursement of the costs of litigation alone does not support standing.  Id. (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 108 (1998)).  Indeed, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  Buchholz v. Meyer Njus Tanick, PA, 946 F.3d 855, 865 (6th Cir. 2020).

Here, Plaintiff could not identify any documents to support that she (herself) spent any time or effort as a result of the credit reporting.  (SUMF ¶ 34.)  Likely, Plaintiff will argue that, as alleged in her Complaint, the time and effort was "to have her attorney write a letter to Defendant to re-emphasize that these debts were no longer owed and that Defendant needed to fix its improper reporting of these accounts."  (Doc. 1 ¶ 10.)  In a similar case, Judge Kays rejected the argument that alleged "time and effort" established a concrete injury, because, like the case at bar, the plaintiff had already retained counsel to address his debt issues and plaintiff testified that he only spent a few minutes reviewing the letter at issue in that case.  Bauer, 2024 WL 3512079 at *3.[6]  The result should be the same in this case.

### iv.    Alleged Credit Harm

As to the alleged credit harm, there is again no evidence to support Plaintiff's claim.  (SUMF ¶¶ 18-25.)  Plaintiff's Complaint alleged that the credit reporting negatively impacted her credit score.  (SUMF ¶ 17.)  However, Plaintiff admitted in discovery that she has no documents to support that the credit reporting caused any harm to her credit score.  (SUMF ¶ 19.)  Also, Plaintiff does not know if her credit rating was impaired because of Midland's reporting of the Accounts.  (SUMF ¶ 18.)  Regarding the alleged inability to obtain credit, Plaintiff produced no

---

[6] Also, if "time and effort" were sufficient to confer standing, it would be the exception that swallows the rule.  Every act takes time and effort.  Certainly, setting up a lawsuit takes time and effort.  Standing would always be present if this were the standard.

documents to support the allegation.  (SUMF ¶ 20.)  She could offer no specifics in her deposition with any degree of certainty, such as the name of the alleged creditor and a reason why she was allegedly denied credit.  (SUMF ¶¶ 19-20.)  Simply, there is no evidence to support that Plaintiff's credit was in any way impacted by the continued reporting of Plaintiff's Accounts as "disputed."

### b. Plaintiff Has No Intangible Injuries

The Supreme Court has recognized that intangible harms may be concrete, if the injury has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  Denmon, 2025 WL 2329189, at *1.  Here, Plaintiff has not brought forward any evidence to demonstrate that she has suffered an intangible injury.

### c. Plaintiff's Alleged Injuries Were Self-Inflicted, And Thus, Plaintiff Cannot Establish That Her "Injuries" Were Caused by the Credit Reporting

Even if Plaintiff could establish that she has an injury, she must also establish that the concrete injury was "*caused by* the defendant."  Ojogwu, 26 F.4th at 463 (quoting TransUnion, 141 S. Ct. at 2203).  Courts have held that "a plaintiff cannot create an injury by taking precautionary measures against a speculative fear."  Buchholz, 946 F.3d at 865 (citing cases).  Nor can plaintiffs "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  Id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 410 (2013)).

Judge Kays, in Bauer, viewing the alleged expense (the cost of a postage stamp) in the context of a case similar to the case at bar, determined that the expense was "merely an attempt to manufacture standing."  Bauer, 2024 WL 3512079, *3.  So too is the case here.

As to the alleged cost of the credit report and Counsel's Letter, even if Plaintiff had established that she *paid* or *incurred* these alleged expenses (she did not), they were not "caused" by the credit reporting.  Instead, the expenses were caused by Plaintiff's counsel choosing to incur

16

those expenses (in an obvious attempt to create damage). Indeed, Plaintiff did not procure the Experian credit report at issue, nor does Plaintiff know if she ever saw it. (SUMF ¶ 10.) Thus, like in Bauer, the alleged expenses were contrived to manufacture standing and should be rejected.

As to any asserted emotional distress or other alleged intangible injuries, not only has Plaintiff brought forward no evidence of those injuries, but there is no evidence in the record that those injuries were "*caused by* the defendant." Williams v. LVNV Funding, LLC, 21-01407, 2024 WL 1194492, at *4 (E.D. Mo. Mar. 20, 2024) (citing Ojogwu, 26 F.4th at 463) (holding that plaintiff did not establish that emotional distress was traceable to defendant's misstatement to credit reporting agencies). Instead, the evidence demonstrates that the alleged emotional distress was caused by Plaintiff filing this lawsuit and/or by a family law matter that is wholly unrelated to the credit reporting. (SUMF ¶¶ 30-31.) Thus, not only is there no injury here, but there is no evidence that the phantom injury was caused by Midland continuing to report that Plaintiff's Accounts were "disputed." Thus, standing is lacking on this basis as well.

**B. Alternatively, Judgment Should Enter for Midland Because Plaintiff Cannot Establish That the Credit Reporting Violated Sections 1692e(2)(A) or 1692f**

As set forth above, Plaintiff claims that the credit reporting of her Accounts as "disputed" was false or misleading under Section 1692e(2)(A) or abusive under Section 1692f. Again, Section 1692e(2)(A) addresses the "false representation" of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692f is a catch-all and prohibits the use of unfair or unconscionable means to collect a debt. 15 U.S.C. § 1692f. Both claims fail on the merits.

**1. Plaintiff's Section 1692e(2)(A) Claim Fails Because the Statement Was Not Materially False or Misleading**

The Eighth Circuit has consistently held that in order for a claim to be actionable under 1692(e), the alleged misstatement must be *materially* false or misleading. Hill v. Accts. Receivable Servs., LLC, 888 F.3d 343, 346 (8th Cir. 2018). Moreover, the Eighth Circuit has

17

noted that claims under Section 1692(e) are limited to false or misleading statements that are made directly to the consumer, and that affect the ability of a consumer to make an intelligent choice about the debt. See id. (recognizing that the FDCPA is designed to provide information that helps consumers to choose intelligently, and immaterial information that neither contributes to that objective or undermines is it not material and, thus, not actionable); Volden v. Innovative Fin. Sys., Inc., 440 F.3d 947, 954 (8th Circ. 2006) (rejecting a 1692(e) claim based upon statements made to a court, and noting, "the weight of authority applying section 1692(e) does so in the context of a debt collector making a false, deceptive, or misleading representation *to the plaintiff*") (emphasis in original). Indeed, statements made to third parties, even if false, are generally *not* actionable under Section 1692(e). Hemmingsen v. Messerli & Kramer, P.A., No. 09-1384, 2011 WL 494941, at *3 (D. Minn. Feb. 7, 2011), aff'd on other grounds, 674 F.3d 814 (8th Cir. 2012) ("a debt collector's false representation to a third party did not violate the FDCPA when no false representation was made directly to the plaintiff.").

Here, the record before the Court is that the alleged false statements were sent to Experian, not to Plaintiff. Indeed, there is nothing in the record that Plaintiff or anyone else ever saw the Experian credit report at issue during the relevant timeframe. (SUMF ¶¶ 9, 25.) There is certainly nothing in the record to show that the statement made to Experian affected *her* ability to make an intelligent choice—to the contrary, her *counsel* obtained the credit report and her *counsel* addressed the issue. (SUMF ¶¶ 10, 18-25, 34.) Therefore, under established Eighth Circuit case law, the statement is not actionable under 1692(e).

> **2.    Plaintiff's Section 1692f Claim Fails Because it is Duplicative and the Conduct Alleged Was Not "Unfair or Unconscionable"**

Section 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect a debt," and was enacted "to catch conduct *not otherwise covered by the FDCPA*." Spehr

v. Seterus, Inc., No. 18-1922, 2019 WL 4246929, at *6 (E.D. Mo. Sept. 6, 2019) (emphasis in original).  Section 1692f claims may not duplicate claims brought under other FDCPA sections and fail as a matter of law when they are "based on the same facts that did not give rise to a violation of the specific section of the FDCPA that deals directly with the conduct alleged."  E.g., Bedrosian v. Kansas Couns., Inc., No. 15-00942, 2015 WL 6445341, at *2 (E.D. Mo. Oct. 23, 2015).

Here, the § 1692f claim is based on the same allegations that serve as the basis for her Section 1692e(2)(A) claim.  (Compare Doc. 1 ¶¶ 13-16, with Doc. 1 ¶¶ 17-20.)  Thus, it should be summarily dismissed.  E.g., Cramer v. Equifax Info. Servs., LLC, No. 18-1078 CAS, 2019 WL 5188942, at *5 (E.D. Mo. Oct. 15, 2019); Petri v. Valarity, LLC, No. 15-72 (CEJ), 2015 WL 13650911, at *4 (E.D. Mo. Mar. 13, 2015).  Thus, the claim fails on this basis.

The claim also fails because the mistake in continuing to credit report the Accounts as "disputed" was not "marked by injustice, partiality, or deception," nor was it "shockingly unfair or unjust," which are the definitions of "unfair" and "unconscionable" in this context.  Fox v. ProCollect, Inc., No. 17-00634, 2019 WL 386159, at *8 (E.D. Ark. Jan. 30, 2019) (citing Miljkovic v. Shafritz & Dinkin, PA, 791 F.3d 1291, 1308 (11th Cir. 2015)).  For this additional reason, judgment should enter for Midland on this claim.

**C.  Judgment Should Enter for Midland Because It Is Entitled To The Bona Fide Error Defense**

The FDCPA provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  It is well-established that "[t]he bona fide error defense is an affirmative defense that insulates debt

19

collectors from liability even when they have violated the FDCPA." Johnson v. Riddle, 443 F.3d 723, 727 (10th Cir. 2006); see, e.g., Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001).

To establish the defense, the defendant must demonstrate that the alleged FDCPA violation was: "(1) unintentional, (2) a bona fide [i.e., good faith] error, and (3) made despite procedures reasonably adapted to avoid the violation." Sires v. Midland Credit Mgmt., Inc., No. 23-00583, 2024 WL 2274083, at *4 (D. Colo. May 20, 2024) (discussing three elements).

"As to the first element, 'a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act.'" Sires, 2024 WL 2274083, *4 (quoting Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006)). Regarding the second element, for an error to be "bona fide," "it must be made in good faith, inadvertently, without fraud or deceit, and with faithfulness to one's duty or obligation." Bynum v. Cavalry Portfolio Servs., L.L.C., No. 04-0515, 2005 WL 2789199, at *4 (N.D. Okla. Sept. 29, 2005). Last, the procedures element "involves a two-step inquiry: first, whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." Sires, 2024 WL 2274083, at *6. Here, all elements are met.

First, Midland did not intend to violate the FDCPA. (SUMF ¶¶ 50, 52.) When Midland credit reported the Accounts as undisputed, it believed that to be true. (SUMF ¶¶ 48-49.) The record buttresses this position. Midland's account notes demonstrate that its employee made a coding error, which resulted in the Accounts being reported as "dismissed without prejudice," as opposed to "dismissed with prejudice." (SUMF ¶ 48-50.) Because the Accounts were mistakenly coded, the Accounts continued to be credit reported and were being reported as owed but

20

"disputed." (SUMF ¶ 49.) When Midland received notice of the mistake, it immediately investigated the issue and then corrected the reporting. (SUMF ¶ 53.)

The same facts establish that the error was bona fide, as it was genuine and made in good faith. West v. Abendroth & Russell L. Firm, 45 F. Supp. 3d 959, 967 (N.D. Iowa 2014) (holding that the same facts established that the error was unintentional and bona fide). Midland's employee mistakenly coded the dismissal as "without prejudice" as opposed to "with prejudice." (SUMF ¶¶ 48-49.) There is no evidence to suggest that the employee acted in bad faith or that the mistake was not genuine. This establishes that the error was bona fide. Id. Thus, the second element is met.

Third, Midland maintains reasonable procedures to avoid violating the FDCPA in these circumstances. Midland has written policies and procedures that pertain to the steps that need to be taken as a result of a settlement in a lawsuit and that govern how its employees must code legal documents. (SUMF ¶¶ 42-47.) The policies and procedures pertain to what coding should have been used in this case. (SUMF ¶¶ 46-47.) Instead of pressing an F12 button on a keyboard and then performing steps that would culminate in the C125 code for dismissed with prejudice, the employee simply pressed the wrong button. (SUMF ¶¶ 47-48.) The policies were reasonably adapted to avoid the error that occurred here. People make mistakes. Such good faith mistakes are the quintessential reason that the bona fide error was written into the FDCPA.

In short, even if the Court were to find that Plaintiff has standing and that an FDCPA violation occurred, the bona fide error defense absolves Midland of any liability for Plaintiff's claims.

## IV.    CONCLUSION

For the reasons set forth above, Midland asks that the Court enter judgment for it on Plaintiff's Complaint and award it costs and fees as allowed by law or that the Court deems just.

21

DATED this 11th day of September, 2025.

Respectfully submitted,

SPENCER FANE LLP

By: s/ Shilee T. Mullin

Shilee T. Mullin       MO Bar No. 52207
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: (402) 965-8600
Fax: (402) 965-8601
E-mail: smullin@spencerfane.com

Joshua C. Dickinson    MO Bar No. 51446
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
E-mail: jdickinson@spencerfane.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the Western District of Missouri on the 11th day of September 2025, with notice of case activity generated and sent to counsel of record.

s/ Shilee T. Mullin

22